**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **IDA MAE LOWE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 3:15-cv-877-WKW-PWG** |
| | ) |
| **STATE FARM FIRE AND** | ) |
| **CASUALTY CO.,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

On October 21, 2015, Plaintiff Ida Mae Lowe filed a civil complaint in the Circuit Court of Macon County, Alabama. (Doc. 1-1). The state court complaint, sounding exclusively in state law, alleges claims against Defendant State Farm Fire and Casualty Company under the following four counts: (1) breach of contract, (2) bad faith, (3) bad faith-failure to investigate, and (4) negligence and wantonness. (*Id.*). On November 23, 2015, Defendant removed the dispute to the United States District Court for the Middle District of Alabama, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.

For the purposes of this recommendation, it is uncontested that the parties are diverse.[1]  On December 10, 2015, Plaintiff filed a motion to remand the action to the state court, asserting that "Defendant has not met its burden of showing the amount in controversy exceeds $75,000."  (Doc. 7).  That same day, the court ordered Defendant to show cause by December 30, 2015, why this action should not be remanded to state court for lack of subject matter jurisdiction at the time of removal.  (Doc. 8).   On December 30, 2015, Defendant tendered a response.  (Doc. 9).

The matter is before the undersigned pursuant to the order of reference dated November 25, 2015.  (Doc. 4).  *See also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jefferey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).  The motion to remand is taken under submission on the record and without oral argument.  For the reasons discussed below, the motion to remand is due to be granted and this cause remanded to the Circuit Court of Macon County, Alabama.  Defendant has not met its burden to show the minimum amount in controversy.

---

[1]  When, as here, the purported statutory basis for federal jurisdiction is § 1332(a)(1)—a civil action satisfying the amount-in-controversy requirement and between "citizens of different States"—there must be "complete diversity of citizenship.  That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

## I.   PLAINTIFF'S COMPLAINT AND DEFENDANT'S NOTICE OF REMOVAL

Plaintiff's allegations of fact against Defendant are set out in three separate paragraphs and are brief. (Doc. 1-1 at ¶¶ 4-6). At some time before October 8, 2014, Plaintiff purchased a home owner's policy (Policy No. 01-BJ-J611-1) from Defendant to insure her residence located at 205 Smith Road, Shorter, Alabama. (*Id.* at ¶ 4). According to Plaintiff, on October 6, 2014, her residence "sustained property damage when a pipe burst within the wall of [her] home." (*Id.* at ¶ 5). Plaintiff's home insurance policy, Policy No. 01-BJ-J611-1, was in full force and effect at the time of the incident. (*Id.*). However, Plaintiff's claims under the policy were denied by the Defendant. (*Id.*).

Plaintiff states in the complaint that she has: (1) lost the use and benefit of monies making premium benefits; (2) lost the benefits of the policy; and (3) incurred mental anguish and suffering. (*Id.* at ¶ 6). She claims in her first cause of action that the Defendant breached the insurance contract by not paying "the benefits incurred by the Plaintiff." (*Id.* at ¶ 9). Plaintiff further asserts two bad faith causes of action, contending that Defendant has acted in bad faith by denying her insurance claim, not investigating whether or not the insurance claim is associated with any flood damage, and refusing to pay the full amount of coverage available. (*Id.* at ¶¶ 11-18). Finally,

Plaintiff asserts claims of negligence and wantonness against Defendant. (*Id.* at ¶¶ 19-22). Plaintiff "demands judgment . . . for compensatory and punitive damages, not to exceed $74,500, in the aggregate, for all claims under this lawsuit and for costs and interest. (*Id.* at p. 5).

In the notice of removal, Defendant states that the parties are completely diverse in their citizenship as required by § 1332. (Doc. 1 at p. 2). Defendant further alleges that the minimum amount in controversy requirement has been met on the basis that: (1) the policy limits of the dwelling coverage for Plaintiff's home is $59,568; (2) Plaintiff's daughter reported to one of Defendant's agents that "the floors were collapsing throughout [Plaintiff's] house, that the kitchen floor was cracking, and that there was a hole in the floor near the stove;" and (3) even though Plaintiff demands judgment for compensatory and punitive damages not to exceed $74,500, parties in Alabama "can recover more than is demanded in the Complaint and there is no limit on the amount a party can recover for compensatory or punitive damages." (*Id.* at pp. 3-4). Defendant asserts, therefore, that "the real amount at issue before the Court is [Plaintiff's] policy limits of nearly $60,000 plus claims for mental anguish and punitive damages, which greatly exceed the $75,000 threshold. (*Id.* at p. 6).

4

## II.   DISCUSSION

### A.   General Legal Principles

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  A federal district court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).   Therefore, a federal court is obligated to inquire into subject matter jurisdiction "at the earliest possible stage in the proceedings."  *Id.* at 410.  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377.

When, as here, the purported statutory basis for federal jurisdiction is § 1332(a)(1)—a civil action satisfying the amount-in-controversy requirement and between "citizens of different States"—there must be "complete diversity of citizenship.  That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff."  *Owen Equip. & Erection Co. v.*

*Kroger*, 437 U.S. 365, 373 (1978).  Also, "[d]iversity jurisdiction exists where ... the amount in controversy exceeds the statutorily prescribed amount, in this case, $75,000." *Griffith v. Wal-Mart Stores East, L.P*, 884 F. Supp. 2d 1218, 1222 (N.D. Ala. 2012) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). Removal jurisdiction requires both complete diversity and satisfaction of the requisite amount in controversy. A case does not become removable until both conditions are present.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  A removing defendant must establish the propriety of removal under 28 U.S.C. §§ 1441, 1446 and, therefore, must demonstrate the existence of federal jurisdiction. *See*, *e.g.*, *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction.").  The procedural propriety of removal is often intertwined with the substantive question of the existence of subject

matter jurisdiction.  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court.  *Burns*, 31 F.3d at 1095.

### B.    Amount in Controversy

When a case is removed—that is, which provision of 28 U.S.C. § 1446(b) ((b)(1) or (b)(3)) a removing defendant invokes—also governs the burden of proof as to amount in controversy.  *See, e.g.*, *Jones v. Novartis Pharms. Co.*, 952 F. Supp. 2d 1277, 1281–82 (N.D. Ala. 2013) ("The removal procedure statute contemplates two ways that a case may be removed based on diversity jurisdiction.  The first way (formerly referred to as 'first paragraph removals')[, and accomplished pursuant to 28 U.S.C. § 1446(b)(1),] involves civil cases where the jurisdictional grounds for removal are apparent on the face of the initial pleadings.  The second way (formerly referred to as 'second paragraph removals') contemplates removal where the jurisdictional grounds later become apparent through the defendant's receipt of 'an amended pleading, motion, order or other paper from which it may first be ascertained

that the case is one which is or has become removable.'" (quoting 28 U.S.C. § 1446(b)(3) (footnote omitted)).[2]

In the notice of removal, Defendant contends that the lawsuit at issue is removable generally pursuant to § 1446(b), but does not specify whether this is a (b)(1) or a (b)(3) removal. (Doc. 1 at p. 2). That distinction is normally apparent upon the facts pled in a notice of removal, which should clearly designate whether the removing party construed the initial pleading as being removable on its face, and therefore a (b)(1) removal, or if there is (b)(3) "other paper" received from Plaintiff that caused the jurisdictional amount to become apparent.

Because the notice of removal was timely filed within thirty days from the date Defendant was served with a copy of the original state court complaint,[3] this case is a first paragraph, or a § 1446(b)(1), removal. *See Sallee v. Ford Motor Co.*, No. 2:13-cv-806-WKW, 2014 WL 1492874, at *3 (M.D. Ala. Apr. 16, 2014) (explaining when the clock begins to run for the thirty day periods implicated by § 1441(b)).

---

[2] As noted in *Jones,* the distinction between "first paragraph" and "second paragraph" removals is rendered obsolete by a clearer version of the removal statute, as amended by the *Federal Courts Jurisdiction and Venue Clarification Act of 2011*, PL 112–63, December 7, 2011, 125 Stat. 758, which added subsections to 28 U.S.C. § 1446(b). The substance of the removal procedure is not affected by the stylistic changes to the statute; therefore, the previous case law discussing "first paragraph" and "second paragraph" removals is still applicable despite its outdated terminology.

[3] Defendant was served with a copy of Plaintiff's original complaint on October 23, 2015. (Doc. 1-2 at p. 24). Defendant subsequently filed his removal on Monday, November 23, 2015. (Doc. 1 at p. 7).

Plaintiff moved to remand this case within thirty days from the filing of the notice of removal; accordingly, Plaintiff has timely, within the "thirty day window ... challenge[d] the propriety of the removal itself ... on the basis of a procedural defect [and] a lack of subject matter jurisdiction." *Sallee*, 2014 WL 1492874 at *3 (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007)).

If a defendant removes to federal court pursuant to § 1446(b)(1), then that party generally must demonstrate federal jurisdiction by a "preponderance of the evidence," whether or not that evidence is received from the plaintiff. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010). *Pretka* reminds district courts that "the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section ... because the first paragraph of § 1446(b) does not 'restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal[' ... and] 'the use of deduction, inference, or other extrapolation of the amount in controversy is [not] impermissible[.]'" *Wilson v. Chester Bross Const. Co.*, No. CA 11-0020-KD-C, 2011 WL 1380052, at *12 (S.D. Ala. Apr. 12, 2011) (relying on and quoting *Pretka*, 603 F.3d at 753, 771). Under § 1446(b)(1), therefore, any evidence proffered by Defendant is properly considered in addition to the allegations contained in the state court complaint.

9

The parties disagree in this case as to whether the "preponderance of the evidence" standard applies with regard to Defendant's burden in demonstrating federal jurisdiction.  Plaintiff states in the motion to remand that her state law complaint expressly "limited her demand for damages, both compensatory and punitive, to a maximum of $74,500."  (Doc. 7 at p. 1).  Citing the Eleventh Circuit Court of Appeals' decision in *Burns*, *supra*, Plaintiff contends that "Defendant has a higher burden and must show that it is a 'legal certainty' that Plaintiff will recover more than $75,000."  (Doc. 7 at p. 2).  Defendant counters that the "legal certainty" test has been replaced under 42 U.S.C. § 1446(c)(2)(B) with a "preponderance of the evidence" standard.  (Doc. 9 at p. 1).

In *Burns*, the Eleventh Circuit held that, in cases where a specific amount of damages is demanded in the complaint, a removing defendant must prove to a "legal certainty" that the plaintiff's claim exceeds the jurisdictional threshold.  *See Burns*, 31 F.3d at 1095.  "The standard was altered, however, by a 2011 statutory amendment to 28 U.S.C. § 1446."  *Harris v. Aghababaei*, 81 F.Supp.3d 1278, 1280 (M.D. Ala. 2015) (citing Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 762 (2011) (enacted December 7, 2011, and taking effect January 6, 2012)).  The Jurisdiction and Venue Clarification Act amended § 1446(c)(2) to read as follows:

10

(2)    If removal of a civil action is sought on the basis of the jurisdictional amount conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that –

    A.    the notice of removal may assert the amount in controversy if the initial pleading seeks —

        (I)    non-monetary relief; or

        (ii)    a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

    (B)    removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, *by the preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2) (emphasis added). "In cases falling under the terms of § 1446(c)(2), therefore, the preponderance of the evidence standard now applies." *Aghababaei*, 81 F.Supp.3d at 1280-81. Citing the Jurisdiction and Venue Clarification Act, the Supreme Court recently recognized this change. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S.Ct. 547, 553-54 (2014) (explaining that, when the amount in controversy is in dispute, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied").

Plaintiff demands a monetary amount in the *ad damnum* clause of the complaint that is less than the jurisdictional threshold amount of $75,000. (Doc. 1-1 at p. 5). However, the State of Alabama "permits recovery of damages exceeding the amount claimed in the *ad damnum* clause." *Aghababaei*, 81 F.Supp.2d at 1281 (citing Ala. R. Civ. P. 54©). Consequently, because Plaintiff's state court complaint demands a money judgment and "State practice . . . permits recovery of damages in excess of the amount demanded," § 1446(c)(2) governs in this case. *See Aghababaei*, 81 F.Supp.2d at 1281. It is therefore necessary to evaluate whether Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds the threshold jurisdictional amount of $75,000.

In applying the "preponderance of the evidence" standard, the Eleventh Circuit in *Roe* explained that district courts are permitted:

> to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a complaint is removable. Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount. Instead courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Roe*, 613 F.3d at 1061-62 (citations and quotations omitted). District courts may also "rely on evidence put forth by the removing defendant, as well as reasonable

inferences and deductions drawn from that evidence." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014). This court has previously considered the Eleventh Circuit's holding in *Roe*, concluding that:

> Although *Roe* recognizes that "judicial experience and common sense" may support "reasonable inferences" drawn "from the pleadings" to determine whether "the case stated in [the] complaint meets federal jurisdictional requirements," nothing in *Roe* permits the court to indulge in speculation or fill empty gaps in a plaintiff's factual averments with unfounded assumptions about what the evidence may show. 613 F.3d at 1061.
>
> "Judicial experience and common sense" are useless for making "reasonable" deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate. A reasonable inference "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Arrington v. State Farm Ins. Co.*, No. 2:14–cv–209–CSC, 2014 WL 2961104, at *6 (M.D. Ala. July 1, 2014) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)). "[W]ithout facts or specific allegations, the amount in controversy" can be determined "only through speculation—and that is impermissible." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1209 (11th Cir. 2007)).
>
> Moreover, it is axiomatic that on a motion to remand all questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court, *see Burns*, 31 F.3d at 1095; thus, to the extent that competing inferences may be drawn from the specific factual allegations of the complaint, the court must indulge those inferences most favorable to remand. *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction); *Pretka*, 608 F.3d at 753–54 ("[W]ithout facts or specific allegations, the amount in controversy could be 'divined [only] by

looking at the stars'—only through speculation—and that is impermissible.").

*Perkins v. Merion Realty Servs.*, LLC, No. 2:14-CV-1171-WKW, 2015 WL 998198, at *3-4 (M.D. Ala. Mar. 6, 2015).

In the *ad damnum* clause of her state court complaint, Plaintiff "demands judgment . . . for compensatory and punitive damages, not to exceed $74,500, in the aggregate, for all claims under this lawsuit and for costs and interest. (*Id.* at p. 5). Defendant contends, however, "that the combination of the compensatory damages for damage to the home, compensatory damage for mental anguish and punitive damages for bad faith places the amount of controversy in excess of $75,000. (Doc. 9 at 5). When adding nearly $60,000 in accordance with the policy limits of the dwelling coverage for her home "plus claims for mental anguish and punitive damages," Defendant contends that "the real amount at issue" well exceeds the $75,000 jurisdictional threshold. (Doc. 1 at p. 6).

Defendant urges the court to utilize its own judicial experience and common sense in evaluating the amount in controversy and exercise its authority to make the appropriate reasonable inferences and extrapolations. (Doc. 9 at p. 1). While it is legally possible that Plaintiff could recover more than the jurisdictional amount, Defendant's burden in sustaining removal jurisdiction is much heavier. Defendant

must show that it is more likely than not that at least $75,000 is truly in controversy, and it has not met that burden as discussed below.

### Policy Limits

Defendant has presented evidence showing that Plaintiff's policy limits of the dwelling coverage for Plaintiff's home is $59,568.  (Doc. 1-3 at 2).  While generally complaining that Defendant "refused to pay the full amount of the coverage available," Plaintiff makes no specific allegation in her complaint that she seeks the policy limits of the dwelling coverage, which by itself falls well short of the $75,000 amount.  (Doc. 1-2 at p. 4).

In determining the proper amount in controversy, it is the value of the underlying claim and not the face amount of the policy limit that controls.  *See Stubbs v. State Farm & Casualty Co.*, No. 2:12-CV-2186-SLB, 2013 WL 980313, at *4-5 (N.D. Ala. Mar. 8, 2013).  The "Claim File" document presented by Defendant describes the damage to Plaintiff's house as "moderate," consisting mainly of collapsed floors in several rooms, a crack in the kitchen floor, and a hole in the floor near the stove.  (Doc. 1-3 at pp. 1-3).  Defendant has provided no evidence estimating how much it will actually cost to make the necessary repairs, and the "Claim File" is silent on the issues of costs to make such repairs.  Even when relying on its judicial experience and common sense, the court can make no reasonable inferences or

deductions regarding the "actual cash value" or cost to repair Plaintiff's home, other than to state that such amount in controversy would appear to total far less than the policy limits of $59,568.   Any attempt to fix such an amount would be pure conjecture or speculation, which is impermissible in determining the true amount in controversy.   *See Pretka*, 608 F.3d at 753–54.

### Compensatory Damages for Mental Anguish and Punitive Damages

Defendant seeks to add Plaintiff's claims for both mental anguish and punitive damages in an attempt to show that the true amount in controversy exceeds $75,000. (Doc. 9 at p. 5).   With regard to establishing a value for mental anguish, Defendant relies on Plaintiff's general allegation in her complaint that Defendant's conduct has caused her mental anguish and suffering.   The complaint, however, contains no specific allegations that would allow the court to draw any reasonable inferences regarding the extent of Plaintiff's mental anguish.   Plaintiff's allegations of mental anguish and suffering say nothing about the value of the claims no matter the seriousness of the general assertion.   *See Benton v. State Farm Fire & Cas. Co.*, No. 2:14-cv77-CSC, 2014 WL 2002851, at *3 (M.D. Ga. May 15, 2014).

"Mental anguish and emotional distress . . vary widely depending on the circumstances, and even very similar circumstances may affect different parties in different ways."   *Arrington*, 2014 WL 2961104, at *6.   There is simply no guide in

the complaint beyond engaging in pure speculation about the amount of compensatory damages for mental anguish, and the court therefore "declines to indulge in speculation or fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence will show." *Earl v. Diebold, Inc.*, No. 14-0498-KD-C, 2015 WL 789763, at *6 (S.D. Ala. Feb. 25, 2015).

Defendant next contends that the value of Plaintiff's claim for punitive damages due to bad faith, when added to the compensatory damages for damage to the home and mental anguish, cause the amount in controversy to exceed $75,000. (Doc. 9 at pp. 3-5). Defendant primarily relies on *Stubbs*, *supra*, a decision issued in the Northern District of Alabama, to support its contention. In *Stubbs*, the plaintiffs purchased a homeowners' insurance policy from the defendant with dwelling coverage limits of $122,600 and contents limits of $91,500. *Stubbs*, 2013 WL 980313, at *1, 3. After the plaintiffs' home was destroyed by a tornado and subsequently condemned, Plaintiff filed a claim and was paid $31,411.54 for structural loss, $1,151.16 for contents loss, and $1,423.98 for living expense loss. *Id.* at *1.

The plaintiffs alleged in their state court complaint that: (1) "defendant's payment was wrongful because it was not consistent with the facts or the Policy;" (2) "defendant intentionally misrepresented the facts and the content of the Policy in a

17

bad faith effort to refuse full payment;" (3) "defendant refused to pay their full claim" as well as "approve and pay the claim to the full extent of coverage;" (4) defendant "intentionally, purposefully, and maliciously delayed the claims process and refused to approve any pay this claim in the absence of any reasonable legitimate or arguable reason for that refusal;" and (5) defendant "had no legitimate reason for refusing to pay their claim and/or it intentionally or recklessly failed to investigate their claim." *Id.* (internal quotations and citations omitted). The plaintiffs sought "an amount [including punitive damages] which will fairly and adequately compensate [them] for their damages in such an amount as a jury may assess." *Id.* The defendant removed the case to federal court, asserting that the amount in controversy was the total policy limits of $214,100 for the house and its contents less the amount paid of $33,986.68. *Id.* The court in *Stubbs* determined, based on its judicial experience and commons sense, that "the amount in controversy as to plaintiffs' bad faith claim exceeds $75,000. *Id.* at *5.

While the court in *Stubbs* found that the plaintiff's bad faith claim exceeded the jurisdictional threshold amount of $75,000, such decision is non-binding on this court. *Stubbs* nevertheless is distinguishable from this case and fails to persuade that the amount in controversy more likely than not meets or exceeds the jurisdictional minimum.

Plaintiff asserts two bad faith causes of action, alleging that Defendant has acted in bad faith by denying her insurance claim, not investigating whether or not the insurance claim is associated with any flood damage, refusing to pay the full amount of coverage available. (Doc. 1-2 at ¶¶ 11-18). The plaintiffs specifically alleged in *Stubbs*, however, that the defendant "misrepresented the facts," "intentionally, purposefully, and maliciously delayed the claims process," and "intentionally or recklessly failed to investigate their claim." *Stubbs*, 2013 WL 980313, at *5. Thus, contrary to the relatively threadbare allegations of bad faith in this case, the plaintiffs in *Stubbs* provided more detailed allegations of the defendant's bad faith conduct for the court to consider when drawing upon its experience and common sense.

Defendant otherwise has provided no sound basis in this case from which an economic assessment of punitive damages can be said to begin. While alleging claims of bad faith and seeking punitive damages to punish Defendant's conduct, Defendant offers nothing to facilitate the valuation of these claims or to evaluate the proper amount of punishment. "The court is not authorized to engage in speculation in the absence of a factual starting point, which is clearly absent here." *Perkins*, 2015 WL 998198, at *5.

*Stubbs* is further distinguishable from this case in one more important aspect. While the plaintiffs therein made an unspecified demand for damages, Plaintiff in this case specifically requests damages, including compensatory and punitive, not to exceed $74,500. (Doc. 1-2 at 5). As this court explained in *Aghababaei*,

> the court takes seriously the Plaintiffs' consistent representations through counsel of their own damages as not exceeding $74,500, and that the Plaintiffs have made abundantly clear that they will not seek damages in excess of $74,500. While the "legal certainty" test from *Burns* no longer applies in this scenario, the limitation on the damages demand is relevant evidence to be weighed, as counsel for Plaintiffs have a duty of candor to the tribunal, and therefore the court takes these representations as true and correct. They cannot be determinative, but the court considers them another relevant factor in assessing the amount in controversy.

*Aghababaei*, 81 F.Supp.3d at 1283. In the motion to remand, Plaintiff reaffirms through counsel that her damages are limited to an amount less than $74,500 for compensatory and punitive damages in the aggregate. (Doc. 7 at p. 7). When considering the consistent representations of Plaintiff's counsel regarding the limitations to the damages amount, along with Defendant's failure to submit evidence going beyond speculation regarding the amount in controversy, Defendant has failed to satisfy its burden to show that the amount in controversy exceeds $75,000.[4]

---

[4] Defendant has presented evidence indicating that it asked Plaintiff to stipulate that she will not seek and will not execute any judgment in excess of $75,000. (Doc. 9 at p. 8). Even though Plaintiff refused to execute the stipulation, such refusal is not dispositive with regard to determining the amount in controversy as exceeding $75,000. *See Aghababaei*, 81 F.Supp.3d at 1283. As discussed above, counsel for Plaintiff has consistently represented that Plaintiff will

Accordingly, Defendant has not demonstrated that removal of this case was appropriate, and it is due to be remanded.

## III.   CONCLUSION AND RECOMMENDATION

For these reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion to remand (Doc. 7) is due to be **GRANTED** and this cause be remanded to the Circuit Court of Macon County, Alabama, for lack of subject matter jurisdiction. The notice of removal is procedurally premature and Defendant has not met its burden to show the minimum amount in controversy.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **March 1, 2016.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District

---

not seek an amount greater than $74,500.

Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 16th day of February, 2016.

/s/ Paul W. Greene
United States Magistrate Judge